# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    v.                               Case No. 09-CR-196

**DERRICK AVERY, et al.,**

        **Defendants.**

## ORDER AND RECOMMENDATION

On July 20, 2009, Magistrate Judge Patricia J. Gorence issued a criminal complaint charging Derrick Avery ("Avery") with three counts related to the trafficking of children for commercial sex purposes. (Docket No. 2.) Avery was arrested in the District of Nevada and made an initial appearance on August 3, 2009. (Docket No. 7 at 3.) Avery was ordered detained and committed to this district on August 4, 2009. (Docket No. 7 at 4.) On August 25, 2009, the grand jury in this district returned a two count indictment charging Avery and a co-defendant with crimes similar to those alleged in the criminal complaint. (Docket No. 6.) Avery first appeared in this district on September 8, 2009. (Docket No. 10.) On October 14, 2009 this case was designated as complex under this district's Local Rules. The motion schedule was held in abeyance pending a scheduling conference. On October 15, 2009, a Scheduling Order was entered regarding the dissemination of discovery.

On December 8, 2009, the grand jury returned a 14-count superseding indictment charging Avery with conspiracy to sex traffic by use of force, in violation of Title 18, United States Code, Section 371 (Count 1), 5 counts of sex trafficking of a child by use of force, fraud, and coercion, in

violation of Title 18, United States Code, Sections 1591 and 2, (Counts 2, 3, 4, 5, 6), and 8 counts of transporting a child to engage in prostitution, in violation of Title 18, United States Code, Sections 2423(a) and 2, (Counts 7, 8, 9, 10, 11, 12, 13, 14). (Docket No. 44.) The indictment also contained a forfeiture notice. (Docket No. 44 at 23-25.) The court issued a revised scheduling order establishing March 22, 2010 as the deadline for the filing of pretrial motions. (Docket No. 50.)

Prior to March 22, 2010, Avery filed a pro se motion for bond, (Docket No. 52), and to suppress evidence, (Docket No. 54.) As this court previously discussed, (see Docket No. 41), Avery is represented by counsel and the court does not permit "hybrid" representation. A defendant has the option of either being represented by counsel or proceeding pro se; he cannot do both. Accordingly, Avery's pro se motions shall be stricken.

On March 22, 2010, counsel filed 10 separate pretrial motions on Avery's behalf. (Docket Nos. 57, 58, 59, 60, 61, 62, 63, 64, 65, 66.) The government has responded, (Docket No. 67), Avery has not replied. The court previously addressed Avery's motion for investigative services and travel expenses. (See Margin Order dated April 13, 2010.) The pleadings on the defendant's motions are closed and the matters are ready for resolution.

Included among Avery's other motions is a motion to set a firm trial date. (Docket No. 60.) This motion involves an issue solely within the province of the Honorable Lynn Adelman, who shall preside over any trial in this matter. Therefore, the court shall refer this motion to Judge Adelman and shall not address it further. As for Avery's remaining motions, the court shall address each of these in turn.

**MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMANT FILE**

In 1997, Avery was indicted in this district on a weapons charge. (Docket No. 57 at 1.) At that time, Avery chose to cooperate with law enforcement and became a confidential informant ("CI") under the supervision of FBI Special Agent Matt Gibson. (Docket No. 57 at 1.) Avery

2

contends that it is standard law enforcement practice to maintain a file outlining a CI's cooperation and he seeks a copy of this file on the basis that it contains exculpatory evidence and supports a defense of "Estoppels by Entrapment" [sic]. (Docket No. 57 at 2.) Counsel states that he has contacted the government regarding this file and has been informed that the file will not be turned over. (Docket No. 57 at 2.)

The government acknowledges the existence of the file but objects to its production on the basis that it does not contain exculpatory information related to the current charges, does not contain any statements that would fall within Fed. R. Crim. P. 16(a)(1), and contains no information relevant to a claim of entrapment by estoppel. (Docket No. 67 at 11-14.) The government notes that its disclosure obligation under Rules 16(a)(1)(A) and 16(a)(1)(B)(ii), the two specific provision Avery alleges are relevant, is limited to *relevant* information and is further limited by the condition that the statement be made in response to interrogation. The government responds that any statements are not relevant to the present criminal charges, which alleges a conspiracy began in January of 2001. (Docket No. 67 at 12.) Further, any statements made in the course of cooperation were necessarily not made in response to interrogation. (Docket No. 67 at 13.) Assistant United States Attorney Joseph R. Wall submitted an affidavit wherein he avers that he has reviewed Avery's CI file and states that it does not contain any Brady material and no information that would be relevant to the affirmative defense of entrapment by estoppel. (Docket No. 67-1 at 1.)

As an initial matter, the court notes that denial of Avery's motion would be appropriate under Crim. L.R. 16(a)(1) in that it constitutes a motion for discovery and lacks the statement required by Crim. L.R. 16(b). But nonetheless, the government has responded, and Avery does state that he had conferred with the government prior to filing the motion. Therefore, the court shall overlook the partial failure to comply with Crim. L.R. 16(a)(1) and shall address the motion upon its merits.

3

The court shall focus upon Avery's contention that the file may contain evidence that would tend to support a defense of entrapment by estoppel. "The entrapment by estoppel defense applies 'when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official.'" United States v. Baker, 438 F.3d 749, 753 (7th Cir. 2006) (quoting United States v. Neville, 82 F.3d 750, 760 (7th Cir. 1996)); see also United States v. Jumah, 493 F.3d 868, 875 n.4 (7th Cir. 2007) (citing 53 Am. Jur. Proof of Facts 3d 249 Proof of Defense of Entrapment by Estoppel § 20 (1999)).

"The defendant must actually rely upon the official's assurances in choosing his or her course of conduct, and such reliance must be reasonable in light of 'the identity of the agent, the point of law represented, and the substance of the misrepresentation.'" United States v. Fish, 388 F.3d 284, 286-287 (7th Cir. 2004), rev'd on other grounds, 125 S. Ct. 1678 (2005) (quoting Neville, 82 F.3d at 761). "Entrapment by estoppel, grounded in the Due Process Clause of the Fifth Amendment, is a defense that is rarely available." United States v. Howell, 37 F.3d 1197, 1204 (7th Cir. 1994). This affirmative defense presents a question that ordinarily can be resolved only by the jury and is available only when the defendant produces "sufficient evidence from which a rational jury could infer that he was entrapped into committing the crime charged." Fish, 388 F.3d at 286 (citing United States v. Santiago-Godinez, 12 F.3d 722, 727 (7th Cir. 1993)).

The court will not authorize a defendant to engage in a suspicionless fishing expedition in the hopes of uncovering potentially useful information, particularly when the defendant seeks to search through records related to a confidential informant. See United States v. Valles, 41 F.3d 355, 358 (7th Cir. 1994); United States v. Phillips, 854 F.2d 273, 278 (7th Cir. 1988). When it comes to confidential informants, it is well-established that such information is privileged. See Roviaro v. United States, 353 U.S. 53, 59-60 (1957); United States v. Conforti, 200 F.2d 365, 367-68 (7th Cir. 1952); United States v. Bender, 5 F.3d 267, 269 (7th Cir. 1993). This privilege encourages citizens

4

to perform their obligation to communicate their knowledge of the commission of crimes to law enforcement officials, by preserving the informant's anonymity. United States v. Jefferson, 252 F.3d 937, 940 (7th Cir. 2001).

But Avery does not seek to troll through the file of some unidentified confidential informant; he seeks merely to access the government's file related to his own cooperation with law enforcement. Thus, the concern that disclosure will dissuade citizens from cooperating with law enforcement is not present in this case. However, that is not to say that law enforcement does not have a substantial legitimate interest in maintaining the secrecy of Avery's CI file. As the Seventh Circuit noted, a CI file

> may contain not only the names of the informants themselves, but also information concerning ongoing investigations into other matters, government investigation techniques, and the like. Thus, when a criminal defendant seeks to discover information contained in confidential government files, the trial court must balance the competing interests of the defendant and the government in deciding whether and in what form such discovery will be allowed.

Phillips, 854 F.2d at 277.

In balancing these concerns and considering the nature of Avery's specific allegations regarding the potential affirmative defense of entrapment by estoppel, (see, e.g., Docket No. 67-8 (press release of defense counsel)), the court concludes that an in camera review of Avery's CI file is appropriate. However, at this time, the court shall not order the government to provide Avery with a summary of the CI file, as the government had agreed to do in Phillips, 854 F.2d at 276.

Phillips is distinguishable in that it involved an active CI who was indicted for a bank robbery that he alleged he was involved in only with the knowledge and acquiescence of the FBI. Id. In the present case, there is no indication that Avery was an active informant during the time period of the alleged conspiracy.

The government has, in effect, offered its summation of Avery's CI file when it stated that it has reviewed the file and concluded that it contains nothing relevant to the present case. Provided

5

this summary is accurate, requiring the government to offer detailed summaries would be a needless expenditure of resources. But just to be sure that the government's summary is wholly accurate, in light of Avery's proffered potential defenses, the court finds that a neutral review of the file by the court is appropriate. Therefore, the court shall order that the government shall provide to the court a complete and unredacted copy of Avery's CI file to the court for an in camera review within 14 days. Upon review of the file, the court shall then enter an order resolving Avery's motion.

**MOTION FOR DISCOVERY OF CO-CONSPIRATOR STATEMENTS**

Avery seeks the statements of any co-conspirator that the government intends to introduce pursuant to Fed. R. Evid. 801(d)(2)(E). (Docket No. 58.) The government responds that it has already provided Avery with all such statements as part of its open file policy and therefore the motion is moot. (Docket No. 67 at 3.) Avery has not replied. Accordingly, the court finds that Avery's motion is moot, and it shall be denied as such.

**MOTION TO BAR ADMISSION OF RULE 404(b) EVIDENCE**

Avery filed a motion whereby he seeks the court to bar "the use of any prior or other acts evidence in accordance with Federal Rule of Evidence 404(b)." (Docket No. 64 at 1.) The superseding indictment in this case contains portions titled, "Manner And Means Of The Conspiracy," and "Acts In Furtherance Of The Conspiracy," which contain 55 separately numbered allegations. (Docket No. 44 at 2-9.) Avery contends that the sections "are merely used as inadmissible 404(b) evidence to show Defendant Avery's propensity to commit other, similar acts." (Docket No. 64 at 4.) But more than the allegations contained in the indictment, Avery seeks to bar the introduction of all evidence of other acts. However, he does not articulate what this other acts evidence may be.

6

Case 2:09-cr-00196-LA   Filed 04/19/10   Page 6 of 19   Document 70

The government's response to this motion is simple—the allegations contained in indictment relate directly to the crime charged and thus do not constitute "other acts" so as to fall within Rule 404(b).

With respect to the allegations in the indictment, the court agrees with the government. The indictment clearly alleges that these acts were all related to the conspiracy alleged and thus would not constitute "other acts." Thus, the court finds no merit to this aspect of Avery's argument. As for the admissibility of any other "other acts" evidence, the admission of evidence is an issue committed to the discretion of the trial judge. Therefore, the court shall deny Avery's motion without prejudice and permit him, if necessary, to raise any objections to other specific Rule 404(b) evidence in a motion in limine.

**MOTION FOR CHANGE OF VENUE**

The defendant seeks to transfer venue of this case to the District of Nevada because Avery was residing in Nevada at the time of his arrest, his "business and associates as well as . . . several witness" are from Nevada, "[a] majority of the physical evidence seized was in Nevada," he believes "the government's star witness (Minor A) in [sic] incarcerated in Nevada," and [t]he agents who conducted the search on Avery's house are from Nevada." (Docket No. 59 at 7.) Alternatively, he contends that a trial in this district would be unfair because "the dangers of provincial emotion and the likelihood of an unfair trial as a result are great," due to press coverage about this case and a similar case in this district "and the recent out cry on television and the news of child trafficking, abuse to minors and sex slavery." (Docket No. 59 at 8.)

Rule 18 states that unless a statute or the Federal Rules of Criminal Procedure say otherwise, an offense must be prosecuted in the district where it was committed. In cases of conspiracies, venue is proper in any district where an act in furtherance of the conspiracy occurred. United States

v. Curley, 55 F.3d 254, 258 (7th Cir. 1995) (citing United States v. Sax, 39 F.3d 1380, 1390 (7th Cir. 1994)).

As for the conspiracy count, it is clear based upon the indictment's outline of the manner and means of the conspiracy, that although it spanned to other states, the Eastern District of Wisconsin was the epicenter of the alleged conspiracy. As for the other counts, each alleges that the crimes occurred "in the State and Eastern District of Wisconsin and elsewhere." Thus the court finds that based upon the indictment, venue is proper in this district under Rule 18.

Turning then to Avery's motion to transfer venue for convenience, Rule 21(b) states: "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." Relying upon Platt v. Minnesota Mining Co., 376 U.S. 240, 243-44 (1964), courts routinely set forth ten factors to be evaluated in determining whether to grant a defendant's motion for a change of venue pursuant to Rule 21(b). See, e.g., United States v. Bein, 539 F. Supp. 72, 73 n.3 (N.D. Ill. 1982) (citing United States v. Keuylian, 602 F.2d 1033, 1038 (2d Cir. 1979); United States v. Testa, 548 F.2d 847, 856-57 (9th Cir. 1977)); see also United States v. Morrison, 946 F.2d 484, 489 (7th Cir. 1991).

> The factors to be considered are: (1) the location of the defendants; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) possible disruption of defendants' business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) the docket condition of each district involved; and (10) any other special factors which might affect the transfer. Platt, 376 U.S. at 243-45. "No one of these considerations is dispositive. . . . It remains for the district court to try to strike a balance and determine which factors are of greatest importance." Morrison, 946 F.2d at 490 n.1.

United States v. Radley, 2008 U.S. Dist. LEXIS 45773, 23-24 (N.D. Ill. 2008) (internal citations edited). To prevail on a motion under Rule 21(b), a defendant need demonstrate only that "all

relevant things considered, the case would be better off transferred to another district." In re Balsimo, 68 F.3d 185, 187 (7th Cir. 1995).

The court concludes that under Rule 21(b), venue remains proper in this district. As Avery's attorney stated during a bond hearing in this matter following Avery's arrest in the District of Nevada, Avery was not living in Nevada at the time of his arrest but was merely there on vacation. (Docket No. 67-4 at 2.) He has been a Milwaukee resident for 40 years, essentially his entire life, and has substantial ties to Milwaukee. (Docket No. 67 at 2.) The government acknowledges that certain law enforcement, citizen, and custodian witnesses will have to come to this district from other states, but contends that this is common in cases such as this where the acts alleged span numerous states.

There is no district that is home to all the evidence or all the witnesses in this case but the record before this court indicates that the Eastern District of Wisconsin is where the greatest weight of the evidence and witnesses lie. Further, the lead case agents work in Milwaukee, the Assistant United States Attorneys assigned to this case are based in Milwaukee, and Avery's counsel practices out of Chicago. Thus, considering all relevant factors, the court concludes that the Eastern District of Wisconsin is the most appropriate district for the present indictment.

Finally, as for Avery's motion to transfer venue due to prejudice, Rule 21(a) states that the court must transfer the proceedings "to another district if the court is satisfied that so great a prejudice against the defendant exists in transferring district that the defendant cannot obtain a fair and impartial trial there."

Avery has not presented the court with any evidence to support his contention that prejudice exists within this district that would deprive him of a fair trial. Aside from baldly asserting that the danger "provincial emotion" in this district is great and that recent television and news coverage has tended not to speak approvingly of child trafficking, abuse to minors, and sex slavery, Avery offers no

9

support of his claim of great prejudice. To the extent that Avery may be contending that media coverage of the defendant has resulted in prejudice, the court finds no merit to the implication that transfer to another district would alleviate any concern. Avery has appeared on the nationally syndicated television show "The Jerry Springer Show," was featured in a 1999 documentary film entitled "Pimps Up, Ho's Down," (clips from which are readily available on YouTube, see, e.g., http://www.youtube.com/watch?v=7q8zcdjvshQ (last visited April 14, 2010); http://www.youtube.com/watch?v=ZKRsYMH4pI (last visited April 14, 2010), and other internet sites), and a 2000 British documentary called "Pimp Snooky." (Docket No. 67 at 9; see also Internet Movie Database, http://www.imdb.com/title/tt0385165/ (last visited April 14, 2010).) Further, Avery's own attorney has issued a press release, which is readily available on the internet, publicizing Avery's case. (Docket No. 67-8.) Additionally, Avery has been the subject of an extensive feature in the *Las Vegas Sun*, available at http://www.lasvegassun.com/news/2009/aug/01/pimp-was-it-role-or-was-it-reality/ (last visited April 14, 2010). (Docket Nos. 67 at 9; 67-5.)

A search of the website of this community's most widely circulated newspaper reveals that Avery has received little publicity in this community. He has been mentioned in connection to his present charges only four times and none of these press reports is notably in-depth or inflammatory. See *Ex-Milwaukeean Charged with Brutal Sex Trafficking*, posted August 3, 2009, available at http://www.jsonline.com/news/milwaukee/52386007.html (last visited April 14, 2010); *Pimp Problem Not New to Milwaukee*, posted August 5, 2009, available at http://www.jsonline.com/news/milwaukee/52560577.html (last visited April 14, 2010); *Man Pleads Guilty to Prostituting Teens*, posted March 4, 2010, available at http://www.jsonline.com/news/milwaukee/86294277.html (last visited April 14, 2010); *Man Charged with 12 New Counts in Sex Trafficking Case*, available at http://www.jsonline.com/news/milwaukee/78834922.html, (last visited April 14, 2010). Finally, the court finds no reason to conclude that a general sentiment of strong disapproval of child

10

trafficking, abuse to minors, and sex slavery is somehow unique or even more prevalent within this district.

Therefore, the court concludes that Avery has failed to show that venue is improper in this district under Rule 18, that venue would be more proper in the District of Nevada so as to make transfer proper under Rule 21(b), or that transfer is required due to prejudice under Rule 21(a). Accordingly, Avery's motion shall be denied.

**MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO SEARCH WARRANT**

On July 31, 2009, the Las Vegas Metropolitan Police Department applied for and received a search warrant to search a residence with an address of "8111 Cheerful Valley Avenue, Las Vegas, Nevada 89178." (Docket No. 63-1.) Avery contends that evidence seized pursuant to this warrant must be suppressed because "the entire residence had already been illegally searched, the affidavit in support of the Application had fatal flaws on its face, and the issuing magistrate had no jurisdiction." (Docket No. 63 at 4-5.)

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." United States v. Peck, 317 F.3d 754, 755-56 (7th Cir. 2003) (citing United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)). In an effort to support his contention that the residence was searched illegally prior to issuance of the search warrant, Avery points to a paragraph of the affidavit where the affiant states that detectives from the criminal apprehension team, which arrested Avery at the target residence pursuant to an arrest warrant, "did notify your affiant that several items of evidentiary value were left in the residence at 8111 Cheerful Valley Las Vegas, Nevada 89178. The items left at the seen [sic] were out of the scope of their search [sic] warrant, however they would constitute the charges of Pandering, and Living with a Prostitute." (Docket No. 63-1 at 8.)

The affidavit repeatedly refers to the execution of a prior "search warrant" at Avery's residence. (Docket No. 63-1 at 6-8.) This appears to be inaccurate. There is no other indication of a prior search

11

warrant being executed at the target residence. Rather, law enforcement entered the residence pursuant to a warrant for Avery's arrest. The defendant contends that because law enforcement had the authority to only enter the residence to arrest Avery, and evidence of pandering is not readily visible, by seeing items of evidentiary value, law enforcement "would necessarily have had to perform an illegal search of Defendant Avery's residence in order to come to the conclusion that items left at the scene would constitute the charge of Pandering." (Docket No. 63 at 6.) Therefore, Avery's argument goes, because the crucial allegations in the affidavit that would tend to support a finding of probable cause are based upon the officer's observations during the execution of the arrest warrant, if this allegedly illegally obtained evidence is excised from the affidavit, the affidavit fails to establish probable cause to search the target residence.

Avery offers nothing to support his bald assertion that an illegal search of the residence occurred. It is well-established that an officer who is lawfully present need not close his eyes to the other things that he sees while going about his lawful duty. See, e.g., United States v. Raney, 342 F.3d 551, 558-59 (7th Cir. 2003). There are any number of ways that the arrest warrant may have been executed that might have placed the arresting officers in a lawful position to observe items of evidentiary value. And there are any number of items that might have been observed which might bear some evidentiary value to a suspected crime of pandering. Thus, the court finds no merit to Avery's unsupported allegation that the crucial observations recounted in the affidavit must have been obtained illegally. This is the only argument Avery advances in support of his argument that the affidavit fails to establish probable cause and therefore the court shall turn to Avery's second argument in support of his motion to suppress.

Avery next contends that suppression is required because the address of the target residence was misidentified in the search warrant. The warrant identifies the target location as "8111 Cheerful Valley Avenue, Las Vegas, Nevada 89178." (Docket No. 63-1 at 4.) Avery contends that law enforcement

12

"took the search warrant with the address 8111 Cheerful Valley and simply ignored the warrant by searching 3111 Cheerful Valley." (Docket No. 63 at 9.)

The government responds that Avery's contention is simply false; law enforcement obtained a warrant for and searched the residence located at 8111 Cheerful Valley Avenue. The source of Avery's misunderstanding begins with the return filed. The return states that the search was executed at "8111 *Cherry* Valley Ave." (Docket No. 63-1 at 11 (emphasis added).) A subsequent report submitted by the detective who was the affiant for the search warrant states that the Cherry Valley address on the return was inaccurate and states that the search was actually executed at an address on Cheerful Valley. (Docket No. 63-1 at 16.) Unfortunately, the quality of the document filed with this court is poor and it is impossible to discern whether the first numeral in the house number on Cheerful Valley is a 3 or an 8.

Regardless of any mistakes made recording the address of the search on the return or in a subsequent report, in light of the government's response and the lack of a reply by Avery, the evidence is clear that the search warrant authorized the search of "8111 Cheerful Valley Avenue, Las Vegas, Nevada 89178," and this was the location that the police searched. Accordingly, the court finds that this argument in support of suppression is without merit.

Finally, Avery contends that the judge who issued the warrant, a Clark County District Court Judge, lacked jurisdiction to issue a search warrant related to a federal investigation. (Docket No. 67 at 21-22.) Avery offers no authority to support this contention and the court finds this argument to be plainly without merit. As a matter of law, state court judges have the authority, under certain circumstances, to issue federal search warrants. Fed. R. Crim. P. 41(b)(1).

More importantly, Avery is simply wrong with respect to the facts. This was not a federal search warrant. The warrant was issued based upon probable cause to believe that evidence of a violation of Nevada state law would be found in the target residence. (Docket No. 63-1 at 8.) Avery does not allege that a district court judge lacked the authority to issue a warrant to search for evidence of a violation of Nevada state law. Even when an individual is a target of a federal investigation, states remain entitled to

13
Case 2:09-cr-00196-LA   Filed 04/19/10   Page 13 of 19   Document 70

investigate that same individual for suspected violations of state law. This applies even when the state law enforcement officers learn of such information as a result of their cooperation with federal law enforcement. And should any evidence uncovered as part of the state investigation be of value to the federal investigation, there is no bar against the federal government using it in its case. The inter-jurisdictional cooperation that occurred in this case is commonplace and Avery offers absolutely no authority to support what would be a truly revolutionary contention that such cooperative investigative methods could form the basis for suppression.

**MOTION TO DISMISS FOR LACK OF ACCESS TO DISCOVERY**

Avery contends that the indictment should be dismissed because while he has been in custody, he has not been afforded adequate access to the discovery materials. (Docket No. 62 at 1.) He contends that this violates his Sixth Amendment right to present a complete defense. There are more than 25,000 pages of discovery in this matter, all of which is accessible to Avery only in electronic format. (Docket No. 62 at 6.) The discovery is also covered by a protective order due to the fact much of it involves allegations of the sexual exploitation of minors, and as a consequence of that protective order, Avery is prohibited from taking any discovery materials to his cellblock. (Docket No. 29.)

Avery has previously filed pro se letters with the court indicating problems with his accessing discovery, (Docket No. 39), and Avery's access to discovery materials was addressed at Avery's arraignment on the superseding indictment, (see Docket No. 48). The court requested the government to investigate Avery's complaints regarding the access to discovery and the government responded on January 6, 2010 with confirmation from the institution housing Avery that it had the discovery materials and that Avery had, by that time, had been able to view the discovery materials for approximately two hours. (Docket No. 49.)

Since that time, Avery has been able to view the discovery for more than 36 hours. (Docket No. 67-3.) In response to the defendant's present motion, the government has submitted records

14

from the institution indicating that as of March 16, 2010, Avery was provided with access to the discovery materials for a total of 36 hours and 35 minutes. (Docket No. 67-3.) On March 17, 2010, records indicate that there was a problem where the computer was unable to read certain disks of discovery. (Docket No. 67-3 at 5.) Further, Avery has not filed any grievances with the institution regarding his access to discovery. (Docket No. 67-2.)

Avery is being provided with access to discovery. Granted, his access is not unencumbered; he is subject to the logistical limitations of the institution and this court's protective order. With respect to the institution's limitations, the court was informed that a backlog of requests of inmates to use the institution's computers developed due to decreased staffing levels around the winter holidays. (See Docket No. 49-1 at 1.) But since that time, Avery has been provided with substantial time to review his discovery. (See Docket No. 67-3.)

The volume of discovery and a defendant's problems in accessing it are reasons that could support a delay in the date for trial, but the defendant has presented absolutely no authority to suggest that these problems would warrant the dismissal of the indictment. Perhaps there may be circumstances where dismissal might be appropriate if, for some extraordinary reason, the government refused to allow a defendant to view the discovery. But that is not what is happening here. The defendant has been afforded reasonable and appropriate access to the discovery and therefore, the court shall recommend that Avery's motion to dismiss be denied.

**MOTION TO SUPPRESS EVIDENCE GATHERED BY AGENT OF THE GOVERNMENT**

Jacqueline McGee ("McGee") is an associate of Avery and following Avery's arrest and appointment of counsel, she continued to have telephone and mail contact with Avery. (See Docket No. 65.) At the time, she was cooperating with the government and thus relayed her communications with Avery to IRS Special Agent Robert A. Warren ("Warren"). Avery contends

that McGee was an agent of the government and her conduct violated his Fifth and Sixth Amendment rights, and thus all evidence obtained by McGee must be suppressed. (Docket No. 65.)

The government responds that the information relayed by McGee to Warren is innocuous and not of evidentiary value. (Docket No. 67 at 10.) It contends that Avery's motion is meritless and moot. (Docket No. 67 at 11.)

According to a memorandum prepared by Warren, on February 11, 2010, he returned McGee's telephone call. (Docket No. 65-5 at 1.) McGee recounted that she had contact with Avery's son and another associate of Avery's through email and the telephone. (Docket No. 65-1-2.) She also stated that she received approximately 3 calls from Avery wherein Avery asked her generally how she was, and she received a letter from Avery which she offered to provide to law enforcement. (Docket No. 65-5 at 2.) McGee also called Avery's attorney at Avery's request and deposited $100 into Avery's prison account. (Docket No. 65-5 at 2.)

Warren' memorandum states that he suggested that McGee avoid contact with Avery and his associates because McGee might be called to testify for the government, but Warren reminded McGee that she had the right to contact people as she wished. (Docket No. 65-5 at 2.) Warren also stated that McGee should not have contact with another named individual because as a condition of that individual's parole she was prohibited from associating with felons such as McGee. (Docket No. 65-5 at 2.)

"The government may not do, through a private individual, that which it is otherwise forbidden to do." United States v. Feffer, 831 F.2d 734, 737 (7th Cir. 1987). But that is not to say that the conduct of a private individual is always held to the same standards as the police. The question is whether the private person was acting as the "instrument or agent" of the government. Id. at 738 (citing United States v. Walther, 652 F.2d 788 (9th Cir. 1981)). Relevant factors to consider in making this determination are "whether the government knew of and acquiesced in" the

conduct of the private individual and whether the private individual did the act "for the purpose of assisting the government." Id.

The court finds no merit to Avery's present motion. There is absolutely nothing to suggest that McGee's communications were motivated by an interest to assist the government or the government knew of or acquiesced in her engaging in these communications. To the contrary, Warren advised McGee not to have contact with Avery. Further, it is noteworthy that it was Avery who initiated the contacts with McGee. But most importantly, McGee's reported contacts with Avery produced nothing of evidentiary value, and therefore in addition to being meritless, Avery's motion is moot.

**MOTION TO DISMISS BASED UPON LACK OF AUTHORITY TO INVESTIGATE**

Avery argues that the indictment must be dismissed because an IRS agent was involved in the investigation and the IRS lacks the authority to investigate the crimes with which Avery is charged. (Docket No. 66.) However, Avery offers no authority in support of his contention that the involvement of an IRS investigator in this case somehow taints the indictment and warrants dismissal.

The IRS' investigative authority is generally focused upon tax matters, but by having authority to investigate suspected violations of the nation's tax laws, the IRS' investigative authority is necessarily far-reaching. As Benjamin Franklin famously noted, along with death, taxes are one of life's certainties, even for an individual suspected of involvement in an expansive prostitution conspiracy.

If the government chose to investigate whether Avery failed to pay taxes on income earned, this investigation would necessarily include an investigation into the source of Avery's income which the indictment implicitly alleges was from a prostitution conspiracy. The government is not prohibited from conducting a multi-fronted investigation of Avery; simply because the FBI was

17

investigating does not mean that the IRS was prohibited from so doing. There is no suggestion that there exists a bar upon the IRS sharing with the FBI the relevant information that it learned, or vice-versa. Accordingly, the court shall recommend that Avery's motion to suppress shall be denied.

**IT IS THEREFORE ORDERED** that Avery's pro se motions, (Docket Nos. 52, 54), are **stricken**.

**IT IS FURTHER ORDERED** that with respect to Avery's motion for discovery of Avery's confidential informant file, (Docket No. 57), the government shall provide to this court a complete and unredacted copy of the file for an in camera review within **14 days** of the date of this order. The court shall then conduct an in camera review and issue an order resolving Avery's motion.

**IT IS FURTHER ORDERED** that Avery's motion for discovery, (Docket No. 58), is **denied as moot**.

**IT IS FURTHER ORDERED** that Avery's motion for change of venue, (Docket No. 59), is **denied**.

**IT IS FURTHER RECOMMENDED** that Avery's motion to dismiss for lack of access to discovery, (Docket No. 62)**,** be **denied**.

**IT IS FURTHER RECOMMENDED** that Avery's motion to suppress, (Docket No. 63), be **denied**.

**IT IS FURTHER ORDERED** that Avery's motion to exclude evidence, (Docket No. 64), is **denied without prejudice**.

**IT IS FURTHER RECOMMENDED** that Avery's motion to suppress, (Docket No. 65), be **denied**.

**IT IS FURTHER RECOMMENDED** that Avery's motion to dismiss, (Docket No. 66), be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Fed. R. Crim. P. 59(a) and (b)(2) (as amended effective December 1, 2009), whereby written objections to any order or recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this <u>19th</u> day of April, 2010.

<u>s/AARON E. GOODSTEIN</u><br>
U.S. Magistrate Judge