# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                     **Case No. 09-CR-196**

**DERRICK AVERY**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Derrick Avery in a fourteen-count superseding indictment with conspiracy to sex traffic by use of force, contrary to 18 U.S.C. §§ 371 & 1591; two counts of sex trafficking of a child by use of force, fraud and coercion, contrary to 18 U.S.C. § 1591; three counts of sex trafficking by use of force, fraud and coercion, contrary to 18 U.S.C. § 1591; seven counts of transporting a child to engage in prostitution, contrary to 18 U.S.C. § 2423(a); and one count of transportation for purposes of prostitution, contrary to 18 U.S.C. § 2421. Defendant filed various pre-trial motions, and the magistrate judge handling pre-trial proceedings in this case issued a decision denying all but one of the non-dispositive motions and recommending denial of the dispositive motions.

Defendant objects to all of the magistrate judge's conclusions. I review magistrate recommendations on dispositive motions de novo, see Fed. R. Crim. P. 59(b), but set aside orders on non-dispositive motions only if they are contrary to law or clearly erroneous, see Fed. R. Crim. P. 59(a). I address each of the motions in turn.

### I. MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMANT FILE

Defendant apparently cooperated with the government after being charged with

possessing a firearm as felon in 1997, and he filed a motion for disclosure of his informant file to look for exculpatory information in this case. The magistrate judge, relying on United States v. Phillips, 854 F.2d 273, 278 (7th Cir. 1988), decided to conduct an in camera review of the file, after which he would issue an order on the motion.

Without waiting for the magistrate judge to complete his review, defendant filed an objection, arguing that the government must turn over the entire file "as a matter of right." However, defendant cites no authority establishing such a right.[1]  Rather, "when a criminal defendant seeks to discover information contained in confidential government files, the trial court must balance the competing interests of the defendant and the government in deciding whether and in what form such discovery will be allowed." Phillips, 854 F.2d at 277.  That is exactly what the magistrate judge did here.  There is no clear error in his ruling.[2]

On May 6, 2010, the magistrate judge completed his review and issued an order that several documents be turned over.  The government proposed certain redactions, and on May 20, 2010, the magistrate judge issued a second order, in which he rejected certain of the redactions and ordered the government to turn over the redacted pages within fourteen days. Nothing further has been filed on this issue, and I therefore assume the government has complied.  In his May 25, 2010, reply to the government's response to the objections, defendant states that the magistrate judge issued an order directing the turnover of defendant's CI file. I assume that by this defendant meant a turnover of certain relevant portions of the file.

---

[1] Defense counsel indicates that in another case he litigated the government handed over a CI file on request.  But this experience creates no clear legal right.

[2] In its response to the objections, the government states that it has no quarrel with the course selected by the magistrate judge.

2

Seeing no clear error in the magistrate judge's orders, and there being no further objections, this issue appears to be resolved.

## II.  MOTION FOR DISCLOSURE OF CO-CONSPIRATOR STATEMENTS

Defendant also sought disclosure of any co-conspirator statements the government intended to introduce under Fed. R. Evid. 801(d)(2)(E).  The government responded that it had produced such statements pursuant to its open file policy, and defendant filed no reply, so the magistrate judge denied the motion as moot.

In his objections, defendant states that the government had not turned over statements from co-defendant Shamika Evans.  In its response, the government agrees that these statements should be turned over and indicates that they are being copied to a disc for production.  In his reply, defendant indicates that he still does not have the statements.  To the extent that it has not already done so, the government shall produce these statements forthwith.

## III.  MOTION TO BAR ADMISSION OF RULE 404(b) EVIDENCE

Defendant moved to bar the admission of other acts evidence under Fed. R. Evid. 404(b).  The superseding indictment in this case contains fifty-five paragraphs alleging the "manner and means" by which defendant conspired to sex traffic by use of force and coercion, and defendant argued that most of these paragraphs represent an attempt to demonstrate propensity to commit other crimes or violent acts.

It is true that under Rule 404(b) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. But by its plain terms, the Rule only applies to "other" crimes and conduct; it does not apply to

3

acts that provide proof of the charged conduct. E,g,, United States v. Simpson, 479 F.3d 492, 500 (7th Cir. 2007). As the magistrate judge explained, the allegations in the indictment about which defendant complained appear to be related to the charged conspiracy and would not constitute other acts. To the extent that defendant sought to exclude other acts not mentioned in the indictment, the magistrate judge denied the motion without prejudice, allowing defendant to raise any objections to specific 404(b) evidence in a motion in limine. I see no clear error in the magistrate judge's order.

In his objections, defendant argues that, contrary to the magistrate judge's suggestion, he provided specific examples of 404(b) evidence. However, the three examples he cited in the motion are all derived from the superseding indictment. (R. 64 at 4-5, discussing the "rules of prostitution," the alleged punishment for those rules, and the means by which defendant physically assaulted his prostitutes.) Defendant argues that these other acts do not relate to the crime charged and should therefore be barred. At this stage, I am unconvinced. The government, in order to sustain its burden of proof, will have to show that defendant used coercion or force to cause persons to engage in commercial sex acts, and these allegations appear to support that contention. In the original motion, defendant argued that the indictment does not allege when he used the "rules" or inflicted punishments. But an indictment need not explain in detail how the government will prove its case. See United States v. Agostino, 132 F.3d 1183 (7th Cir. 1997). If, at trial, the government attempts to introduce evidence of violence or coercion outside the charged time period or which is unrelated to the charged offenses defendant may renew his motion.

### IV. MOTION FOR CHANGE OF VENUE

Defendant also moved for change of venue to Nevada. As the magistrate judge

4

explained, Fed. R. Crim. P. 18 requires that the government prosecute an offense in a district where the offense was committed. Where an offense begins in one location and continues in others, venue is proper in any district in which such offense was begun, continued, or completed. United States v. Sidener, 876 F.2d 1334, 1337 (7th Cir. 1989). In a conspiracy prosecution, venue rests in any district where an overt act in furtherance of the conspiracy occurred. United States v. Wren, 363 F.3d 654, 660 (7th Cir. 2004), vacated on other grounds, 543 U.S. 1101 (2005). The magistrate judge reviewed the indictment and concluded that venue was proper in this district. He applied the correct legal standards, and I see no clear error in his conclusions.

In his objections, defendant notes that some of his illegal conduct is alleged to have occurred in Nevada, making venue proper in that district.

> "It is clear, however, where the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue. The constitution requires only that the venue chosen be determined from the nature of the crime charged as well as from the location of the act or acts constituting it, and that it not be contrary to an explicit policy underlying venue law."

United States v. Muhammad, 502 F.3d 646, 654 (7th Cir. 2007) (quoting United States v. Reed, 773 F.2d 477, 480 (2d Cir. 1985)). In other words, just because venue might be proper in Nevada does not mean that it is improper in Wisconsin.

The magistrate judge also considered defendant's request to transfer venue for convenience, as permitted by Fed. R. Crim. P. 21. The magistrate judge set forth the ten-factor test derived from Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240, 243-44 (1964), and concluded that this district was the most appropriate place for trial. He specifically noted that, although defendant claimed to be residing in Nevada at the time of his arrest, in his bail

5

motions defendant claimed strong ties to this district. While certain witnesses and evidence will come from Nevada, no district is home to all the evidence and witnesses. Further, the lead case agents and prosecutors are from this district, and defense counsel is from Chicago, all of which suggests that this district will be the most convenient. Finally, the magistrate judge considered defendant's argument for transfer due to prejudice, but found that defendant had presented no evidence that he could not get a fair trial here. He demonstrated no strong media coverage in this district, and no reason to believe that community sentiment against the crimes alleged would be greater here than anywhere else.

In his objections, defendant again states that he was residing in Nevada at the time of his arrest and that his family lives there. This is contrary to the averments in the bail motion pending before me, in which defendant states that he "has significant ties to the Eastern District of Wisconsin" and "a majority of [his] family resides in Milwaukee." (R. 71 at 5.) Defendant acknowledges that the lawyers and case agents are based in this area, but argues that new defense counsel can be appointed and that the federal agents and lawyers can travel or have counterparts in Nevada act. Rule 21 permits transfer for the sake of convenience; it does not require that the primary players in a case pack up and travel elsewhere for trial.

Defendant further argues that there has been "inflammatory, widespread and incessant pretrial publicity" in this district, making a fair trial impossible. (R. 74 at 8.) But he points to just a handful of newspaper stories, none of which appear particularly inflammatory, and two reports by a local TV station. This modest publicity does not warrant transfer. To the extent that potential jurors may have heard of this case, careful voir dire can weed out any who have formed opinions. See Grancorvitz v. Franklin, 890 F.2d 34 (7th Cir. 1989) (finding no error in refusal to transfer venue where the publicity was factual and the trial court conducted careful

6

voir dire).

Finally, defendant notes that transfer to a large metropolitan area like Las Vegas would lessen the prejudicial effect of news coverage.[3] But defendant has failed to establish prejudice in the first place, and in any event transferring the case from Milwaukee to Las Vegas is not equivalent to moving a trial from a small town to the big city, as suggested in the case defendant cites. United States v. Chapin, 515 F.2d 1274, 1288 (D.C. Cir. 1975) ("In considering this aspect of the motion, several courts have suggested that a venue change is usually more effective if it is to a more, rather than less, metropolitan community because a big case in a small town quickly becomes a cause celebre and the focus for substantially more publicity than existed at the time the decision to transfer was made.").

The magistrate judge applied the correct legal standard, and his conclusion is not clearly erroneous. Therefore, venue will remain in this district.

## V. MOTION TO SUPPRESS – SEARCH WARRANT

### A. Background

On July 31, 2009, law enforcement agents entered a residence located at 8111 Cheerful Valley Avenue, Las Vegas, Nevada, to execute federal arrest warrants for defendant and a co-defendant. Agents observed items of evidentiary value while making the arrests and thus applied for a search warrant for 8111 Cheerful Valley from a state court judge. The judge issued the warrant, which officers executed, seizing certain evidence.

Defendant moved to suppress, and although the basis for his motion was not entirely

---

[3]Defendant notes that there have been more press reports here than in Nevada, but that is likely due to the fact that the case is being prosecuted here. The articles appearing in Milwaukee's daily newspaper were authored by the reporter who covers this court.

7

clear, he appeared to argue that (1) the warrant based on a previous, illegal search; (2) the warrant return and an accompanying police report listed the wrong address, requiring suppression of the evidence seized; and (3) the issuing judge lacked jurisdiction. The magistrate judge considered and rejected defendant's arguments, and on de novo review I do so as well.

## B.     Applicable Legal Standards

The court generally employs a sequential, two-step test in determining whether to suppress evidence obtained pursuant to an allegedly defective search warrant. See United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002). The court first decides whether the warrant application contained substantial evidence supporting the issuing judge's probable cause determination. See, e.g., United States v. Sims, 551 F.3d 640, 644 (7th Cir. 2008); United States v. Lloyd, 71 F.3d 1256, 1262 (7th Cir. 1995). If not, the court asks whether the officer could "have reasonably believed that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause." Koerth, 312 F.3d at 866 (citing United States v. Leon, 468 U.S. 897, 920-24 (1984)). Where the applying officer's affidavit is the only evidence presented to the warrant-issuing judge, the warrant must stand or fall solely on the contents of the affidavit. Id. (citing United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)).

Where the defendant contends that a search warrant was tainted by a previous, unlawful search, the court must first determine whether the prior search was, in fact, illegal. See United States v. Groce, 255 F. Supp. 2d 936, 939-43 (E.D. Wis. 2003). If so, the court must then decide whether, after removing from the warrant application the evidence unlawfully obtained, there was still a sufficient basis to establish probable cause. Id. at 943 (citing United States v. May, 214 F.3d 900, 906 (7th Cir. 2000); United States v. Markling, 7 F.3d 1309, 1315 (7th

8

Cir. 1993)).

**C.    Analysis**

    **1.    Legality of Prior "Search"**

The search warrant affidavit indicated that officers executed a "search warrant" at 8111 Cheerful Valley (R. 63-1 at 6), and while doing so noticed "several items of evidentiary value" relevant to a pandering charge, which the officers left in the residence because they were outside the scope of their warrant (R. 63-1 at 8). Although the affidavit refers to a <u>search</u> warrant, it is clear from the record – and the parties agree – that the officers were actually executing a federal <u>arrest</u> warrant when they observed the evidence.

Before the magistrate judge, defendant conceded that the arrest warrant permitted the officers to enter the residence, <u>see</u> <u>Payton v. New York</u>, 445 U.S. 573, 603 (1980), and officers executing a lawful arrest need not ignore evidence of crime they observe, <u>see</u> <u>United States v. Garcia</u>, 376 F.3d 648, 652 (7th Cir. 2004). However, defendant argued that evidence of pandering is not readily apparent, and that the officers must have conducted an illegal search to conclude that items left at the scene constituted evidence of that crime. However, as the magistrate judge noted, defendant offered no evidence that the officers conducted an illegal search while executing the arrest warrants, not even an affidavit from defendant, who was present at the time. Nor did he request an evidentiary hearing. Therefore, as the magistrate judge found, there is no basis for concluding that the warrant application rests upon an earlier, unlawful search. Defendant does not in his objections develop any argument challenging this conclusion, so I consider it abandoned.[4]

---

[4] On page ten of his objections, defendant states: "Additionally, as discussed in Avery's original motion, the officers executing the arrest warrant could not possibly have observed

9

### 2. Errors in Warrant Return and Report

Both the affidavit in support of the search warrant and the search warrant issued in this case correctly identify the residence to be searched as "8111 Cheerful Valley, Las Vegas, Nevada." (R. 63-1 at 3, 4.) However, the warrant return mistakenly lists the address of "8111 Cherry Valley Ave." (R. 63-1 11.) In his report, the officer-affiant noticed the error on the return. Unfortunately, he also got the address wrong in his report, stating that "there was one error made during the service of this search warrant, the address listed on the return was 8111 Cherry Valley Avenue, Las Vegas, Nevada 89178. This was incorrect as the actual address the warrant was served on was in fact 3111 Cheerful Valley Las Vegas Nevada, 89178." (R. 63-1 at 10.) The officer listed the correct street but mistakenly wrote a "3" instead of an "8" for the house number in his report.

In his original motion, defendant claimed, without any evidentiary support, that the officers ignored the warrant for 8111 and searched a different address at 3111. As the government explained and the magistrate judge found, the officers obtained a warrant for and searched 8111 Cheerful Valley – the same residence where they had previously arrested defendant.[5]

---

evidence of pandering sufficient to support probable cause for a search warrant." (R. 74 at 10.) This is insufficient. See United States v. O'Neill, 27 F. Supp. 2d 1121, 1126 (E.D. Wis. 1998) ("Generalized objections, absent specific legal authority, do not invoke the district court's obligation to perform a de novo review of a magistrate's decision."). Defendant has at no point argued that the information in the affidavit failed to establish probable cause. The error in referring to a prior search warrant rather than an arrest warrant did not affect the probable cause determination.

[5]In addition to being wrong on the facts, defendant's argument made little sense. Defendant did not claim that he was living at 3111 Cheerful (or Cherry) Valley rather than 8111 Cheerful Valley. If the officers actually searched 3111 Cheerful (or Cherry) Valley rather than 8111 Cheerful Valley, why would defendant care? And how could any evidence relevant to

10

In his objections, defendant does not contest these facts; rather, he points to the mistakes in the return and the police report, arguing that "the errors made in filing or executing the search warrant provide ample grounds for suppression of any evidence found during the execution of the search warrant." (R. 74 at 10.) However, he provides no authority for the proposition that errors in a warrant return or a police report require suppression of evidence obtained pursuant to an otherwise valid search warrant, and I have found none. See 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.12(c) (4th ed. 2004) (noting that the overwhelming weight of authority is to the effect that required warrant return procedures are ministerial and that failure to comply with them, or clerical errors in the return, are not grounds for voiding an otherwise valid search).

In his reply in support of the objections, defendant notes that the warrant must stand or fall solely on the contents of the affidavit, and that the affiant made mistakes in this case by listing three different addresses. (R. 91 at 3.) Swapping out the words "affidavit" and "affiant" does defendant no good. He points no errors in the warrant application or in the warrant itself; the officer's errors in the return and police report do not nullify the warrant.

### 3. Jurisdiction of State Court Judge

Finally, defendant argued before the magistrate that the state court judge lacked jurisdiction to issue a search warrant related to a federal investigation. As the magistrate judge explained, defendant was wrong as a matter of law and fact. (R. 70 at 13-14.) Defendant does not renew this argument in this objections, so I consider it waived. For these reasons and those stated by the magistrate judge, the motion to suppress must be denied.

---

defendant's charges have been seized from the wrong place? And how would defendant have standing?

11

## VI. MOTION TO DISMISS – ACCESS TO DISCOVERY

Defendant next argued that the indictment should be dismissed because he had not been afforded adequate access to discovery while detained. The magistrate judge noted the volume of evidence in this case – more than 25,000 pages of discovery – which was accessible to defendant only in electronic format. Further, because the discovery is covered by a protective order defendant cannot take it to his cell. The magistrate judge followed up on defendant's complaints in accessing discovery, learning that he had been able to view the discovery for more than thirty-six hours. The magistrate judge noted that the volume of discovery and the problems in accessing it could support a delay of the trial, but defendant had presented no authority suggesting that dismissal was warranted. He therefore recommended that the motion be denied.

In his objections, defendant continues to complain that he has not been afforded enough time to review the discovery, which continues to grow. He also takes issue with the magistrate judge's statement that he presented no authority for his request. Neither argument supports dismissal.

As the magistrate judge noted, if defendant needs more time to review, the appropriate remedy is to delay the trial for a suitable time, not to dismiss the case. And, while defendant did, in the original motion, cite cases concerning the right to present a defense and access exculpatory evidence, see, e.g., California v. Trombetta, 467 U.S. 479 (1984), he has at no point cited any case supporting dismissal for failure to provide full access to discovery. I will continue to monitor the situation to ensure that defendant's rights are respected, but the motion to dismiss must be denied.

12

## VII. MOTION TO SUPPRESS – EVIDENCE GATHERED BY GOVERNMENT AGENT

Defendant next argued that a woman named Jacqueline McGee, apparently an associate of defendant's, acted as a government agent when she relayed the contents of her communications with defendant to an IRS special agent. As the magistrate judge noted, while purely private actions are not subject to constitutional restrictions, the government may not do, through a private individual, that which it is otherwise forbidden to do. In order to determine whether a private person acted as a government agent, the court considers whether the government knew of and acquiesced in the private conduct and whether person acted for the purpose of assisting the government. United States v. Feffer, 831 F.2d 734, 737-38 (7th Cir. 1987).

Defendant did not request an evidentiary hearing on this issue; instead, he relied on a report prepared by the IRS agent, in which the agent indicated that McGee called him. He returned her call, and she advised that she had contact with defendant's son and another associate of defendant, and that she also received about three calls and a letter from defendant. The agent suggested that McGee avoid contact with defendant but reminded her that she could have contact with whomever she wanted.

As the magistrate judge concluded, this conversation provides no support for defendant's argument. There is no indication that McGee communicated with defendant at the government's suggestion or for the purpose of gathering evidence for the government. Rather, it appears that defendant initiated the contact with McGee. Further, the IRS agent advised McGee not to have contact with defendant, which rebuts any notion that McGee was acting to gather evidence for the agent. Finally, as the government and the magistrate judge noted, there does not appear to be anything of evidentiary value to the government in this

13

communication.

In his objections, defendant indicates that there have been other communications between McGee and the agent that could be examined, but he provides no detail on those discussions. Defendant points to the apparently casual nature of the conversation between the two, but he fails to explain how this makes McGee the government's agent. That the two may have spoken before also does not transform McGee into a government operative. Finally, defendant argues that the agent appeared to exercise control over McGee, but that is hardly apparent from the record before me. In any event, as before the magistrate judge, defendant fails to identify anything of evidentiary value McGee turned over to the government. According to the government's response, the conversation was innocuous and non-evidentiary. For these reasons and those stated by the magistrate judge, this motion to suppress must be denied.[6]

### VIII. MOTION TO DISMISS – LACK OF AUTHORITY TO INVESTIGATE

Finally, defendant moved to dismiss because an IRS agent participated in the investigation of this case, along with the FBI. He indicated that IRS criminal investigators are limited to investigating offenses arising under the Internal Revenue Coder and that they should hand a case over to the Department of Justice once a criminal prosecution begins. However, even if the agent overstepped his bounds – which defendant failed to shown – defendant cited absolutely no authority for dismissing the indictment. The magistrate judge therefore recommended that the motion be denied. In his objections, defendant generally points to the

---

[6]Although defendant claims that McGee's conduct violated his Fifth and Sixth Amendment rights, it not clear how this is so. There is no indication that McGee interrogated defendant while he was in custody, potentially triggering Miranda and Edwards. It is unclear whether any independent Sixth Amendment claim survives Montejo v. Louisiana, 129 S. Ct. 2079 (2009). Because there is no evidence that McGee acted as a government agent, I need not resolve these issues.

14

Constitution and specific grants of power from Congress. This is insufficient to justify dismissal, as is the internal Treasury Department memo he also cites. Cf. United States v. Williams, 504 U.S. 36 (1992) (holding that district court could not exercise supervisory powers to dismiss based on violation on Justice Department policy before the grand jury). The motion to dismiss must be denied.

### IX. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendations are adopted, and defendant's motions to dismiss and suppress (R. 62, 63, 65, 66) are **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion to disclosure of co-conspirator statements (R. 58) is **GRANTED**.

**FINALLY, IT IS ORDERED** that defendant's objections to the magistrate judge's other orders are overruled as stated herein.

Dated at Milwaukee, Wisconsin, this 11th day of June, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

15